# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
January 27, 2010 Session

## STATE OF TENNESSEE v. MATTHEW JOSEPH CARTER

**Appeal from the Criminal Court for Knox County**
**No. 79909C      Mary Beth Leibowitz, Judge**

---

**No. E2009-00217-CCA-R3-CD - Filed November 2, 2010**

---

The Defendant, Matthew Joseph Carter, was sentenced as a Range I, violent offender to twenty-three years for second degree murder, a Class A felony, and as a Range I, standard offender to eleven years each for two counts of attempted second degree murder, a Class B felony, and to six years each for three counts of aggravated assault, a Class C felony. The trial court ordered partially consecutive sentences, for an effective forty-year sentence in the Department of Correction. On appeal, the Defendant contends that the sentences are excessive and that the trial court erred in imposing consecutive sentencing. Although we conclude that the trial court erred in applying three of the nine enhancement factors, we hold that the lengths of the sentences imposed by the trial court are appropriate. We hold, though, that the imposition of consecutive sentences was in error and modify the Defendant's sentences to be served concurrently, for an effective twenty-three-year sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed as Modified**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Bruce E. Poston, Knoxville, Tennessee, for the appellant, Matthew Joseph Carter.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; Randall E. Nichols, District Attorney General; and William H. Crabtree, Deputy District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant was the driver of a van in which Alford Morgan, Jeremy Kelley, and James Wright were riding during the early morning of May 24, 2004. Morgan and Kelley

informed the Defendant that they were going to engage in "redneck fun." They loaded the Defendant's van with rocks, bricks, and blocks from a construction site and threw them at mailboxes, parked cars, and oncoming vehicles. They also used sticks to smash mailboxes. Morgan and Kelley dropped objects, including a wooden block and a large rock, from the Brushy Valley overpass above I-75. At least one object struck Gregory Dockins's tractor trailer, destroying its large side mirror. The large rock struck a car driven by Christopher Grande and killed his mother-in-law, Barbara Weimer, who was riding in the front passenger seat. Christopher Grande's wife, Melissa Grande, was riding in the back seat.

The Defendant was convicted by a jury in the Knox County Criminal Court of two counts of second degree murder of Barbara Weimer, two counts of attempted second degree murder of Christopher Grande, two counts of attempted second degree murder of Melissa Grande, one count of aggravated assault of Christopher Grande, one count of aggravated assault of Melissa Grande, reckless endangerment of Melissa and Christopher Grande, one count of aggravated assault of Gregory Dockins, and two counts of reckless endangerment of Gregory Dockins.

After merging the convictions, the trial court sentenced the Defendant to twenty-three years for second degree murder, to eleven years for each attempted second degree murder, and to six years for each aggravated assault. The trial court ordered a partially consecutive sentence, for an effective forty-year sentence. The Defendant appealed, and this court held that the Defendant's oral waiver of ex post facto protections was insufficient to allow the trial court to sentence him pursuant to the 2005 amendments to the Sentencing Act. This court remanded the case to the Knox County Criminal Court for resentencing under the proper Sentencing Act and for reconsideration of the imposition of consecutive sentencing. State v. Matthew Joseph Carter, No. E2006-01265-CCA-R3-CD, Knox County, slip op. (Tenn. Crim. App. Apr. 9, 2008), app. denied (Tenn. Oct. 27, 2008).

The Defendant executed a waiver of ex post facto protections and agreed to be sentenced pursuant to the 2005 amendments to the Sentencing Act. At the resentencing hearing, the presentence report, two warrants, and an appearance bond were received into evidence. The Defendant made a statement in which he apologized to the victims, asked for forgiveness, and thanked the court and the victims because the "whole ordeal" turned him "from a kid into a man" and saved him from self-destruction. Upon merger of the convictions by the trial court, the Defendant's resulting convictions were as follows: one conviction for the second degree murder of Ms. Weimer; one conviction for the attempted second degree murder of Mr. Grande; one conviction for the attempted second degree murder of Ms. Grande; one conviction for the aggravated assault of Mr. Grande; one conviction for the aggravated assault of Ms. Grande; and one conviction for the aggravated assault of Mr. Dockins. With respect to the statutory enhancement and mitigating factors, the court found

that the following enhancement factors applied pursuant to Tennessee Code Annotated section 40-35-114:[1]

> (1) the Defendant had a previous history of criminal convictions;
>
> (3) the offense involved more than one victim;
>
> (5) the Defendant allowed a victim to be treated with extreme cruelty during the commission of the offense;
>
> (7) the offense involved a victim and was committed to gratify the Defendant's desire for pleasure or excitement;

(8) the Defendant failed to comply with conditions involving release in the community because he was on bond following a charge of aggravated assault on the day he committed the offenses in this case;

> (9) the Defendant employed a deadly weapon in the commission of the offenses of attempted second degree murder;
>
> (10) the Defendant had no hesitation about committing attempted second degree murder when the risk to human life was high;
>
> (13) the Defendant committed the offenses in this case while he had been released on bail for another offense of which he was ultimately convicted; and
>
> (16) the Defendant committed delinquent acts as a juvenile that would be considered felonies if committed by an adult.

See T.C.A. § 40-35-114 (2006) (amended 2007, 2008). While not clear, the record demonstrates that the trial court applied mitigating factor (13), the Defendant was a youth at the time of the offense and led by others. See T.C.A. § 40-35-113(13) (2010).

---

[1]The Defendant states in his brief that the trial court imposed factor (4), that the victim was particularly vulnerable due to age. See T.C.A. § 40-35-114(4). However, the record reflects that the trial court considered this factor and rejected it as inapplicable to the Defendant's sentences.

The trial court stated that it was again going to begin its consideration of the Defendant's sentences at the midpoint in the range and imposed the exact sentences it had imposed at the first sentencing hearing. The trial court sentenced the Defendant as a Range I, violent offender to twenty-three years in the Department of Correction for second degree murder and as a Range I, standard offender to eleven years for each attempted second degree murder and to six years for each aggravated assault. The court ordered the sentences for attempted second degree murder to run concurrently with each other and consecutively to the sentence for second degree murder. It ordered the sentences for aggravated assault of Mr. Grande and Ms. Grande to run concurrently with the sentences for the attempted second degree murder. Finally, it ordered the sentence for aggravated assault of Mr. Dockins to run consecutively to the sentences for attempted second degree murder, for an effective forty-year sentence.

# I

On appeal, the Defendant contends that the trial court erred in its rulings on enhancement factors and mitigating factors and in sentencing the Defendant to the top or near the top of each offense's sentencing range. The State contends that the Defendant has not proven reversible error in the trial court's decision setting the lengths of the sentences. We agree with the State.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d) (2010), -402(d) (2010). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "'the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991)). In this respect, for the purpose of meaningful appellate review, the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and

balanced in determining the sentence. State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994); see T.C.A. § 40-35-210(e) (2006) (amended 2009).

Also, in conducting a de novo review, we must consider (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102 (2006) (amended 2007), -103 (2010), -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

In imposing a sentence within the appropriate range of punishment for the defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210. From this, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Carter, 254 S.W.3d at 343 (quoting T.C.A. § 40-35-210(d)).

The 2005 Amendments to the Sentencing Act "increase the amount of discretion a trial court exercises when imposing a sentencing term." Carter, 254 S.W.3d at 344. The trial court was required to consider, but was not bound by, the statutory enhancement and mitigating factors. See T.C.A. § 40-35-210(c)(2); Carter, 254 S.W.3d at 344. An appellate court "is bound by the trial court's decision as to the length of the sentence imposed so long

as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Carter, 254 S.W.3d at 346.

Second degree murder is a Class A felony with a Range I sentencing range of fifteen to twenty-five years. T.C.A. §§ 39-13-210(c), 40-35-112(a)(1) (2010). Attempted second degree murder is a Class B felony with a Range I sentencing range of eight to twelve years. T.C.A. §§ 39-12-101 (2010), -107(a) (2010), 40-35-112(a)(2). Aggravated assault is a Class C felony with a Range I sentencing range of three to six years. T.C.A. §§ 39-13-101 (2006) (amended 2009, 2010), -102(d)(1) (Supp. 2003) (amended 2005, 2009, 2010), 40-35-112(a)(3).

The trial court applied enhancement factor (1), that the Defendant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range. See T.C.A. § 40-35-114(1). The presentence report showed that as an adult, the Defendant had been convicted of public intoxication, reckless endangerment, and casual exchange of a controlled substance, all misdemeanors. We conclude that the trial court properly applied enhancement factor (1) to all of the offenses.

The trial court applied enhancement factor (3), that the offense involved more than one victim, but gave it little weight. The State concedes that factor (3) does not apply. Where the indictment charges that an offense was committed against a specific, named victim, the application of factor (3) is inappropriate. State v. Imfeld, 70 S.W.3d 698, 705-06 (Tenn. 2002). In the indictment, the Defendant was charged with two counts of reckless endangerment of Christopher Grande and Melissa Grande. Each of the other counts in the indictment named a specific victim. After the trial court merged the convictions, the remaining convictions applied to named victims. The trial court's application of factor (3) was inappropriate.

The trial court applied enhancement factor (5), that the Defendant allowed a victim to be treated with exceptional cruelty during the commission of the offense, because this court held on the Defendant's first appeal that the proof supported its application. See Matthew Joseph Carter, slip op. at 14. We reaffirm that the record supports the trial court's application of factor (5) to all of the offenses.

The trial court applied enhancement factor (7), that the offense involved a victim and was committed to gratify the Defendant's desire for pleasure or excitement. The court found that the Defendant and the codefendants went on a crime spree and that they took great pleasure and excitement in what they did. The record reflects that the Defendant drove Morgan and Kelley around in order to engage in "redneck fun." When he returned to the overpass later in the evening and saw television news crews, the Defendant "laughed

hysterically" and remarked, "I know what that's about. We f------ s--- up tonight." Matthew Joseph Carter, slip op. at 6. The record supports the trial court's application of factor (7) to all of the offenses.

The trial court applied enhancement factor (8), that the Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community. T.C.A. § 40-35-114(8). The record reflects that the Defendant was not subject to a sentence involving release into the community at the time he committed the offenses in this case.

At the resentencing, the State introduced two warrants and an appearance bond into evidence. According to the warrants, on January 13, 2003, the Defendant pled guilty to casual exchange of a controlled substance, for which he received judicial diversion of an eleven-month and twenty-nine-day jail sentence and was placed on probation for the same time period pursuant to Tennessee Code Annotated section 40-35-313. That probation ended on January 12, 2004. The Defendant was then arrested for aggravated assault on January 15, 2004. The Defendant was released on bail pending disposition of the aggravated assault charge on January 16, 2004, but he was not sentenced on that charge until the late morning of May 24, 2004, hours after the Defendant committed the acts at issue in this appeal. The record reflects that the Defendant was no longer on probation for casual exchange when he committed aggravated assault on January 15, 2004. The Defendant had been released on bail pending disposition of the aggravated assault charge, but he was not on probation when he committed the offenses in this case. We hold that the trial court erred in applying factor (8) to the Defendant's offenses.

It is unclear from the record whether the trial court applied enhancement factor (9), that the Defendant possessed or employed a firearm, explosive device, or deadly weapon during the commission of the offense, either to all the sentences or to all the sentences except the aggravated assaults. See T.C.A. § 40-35-114(9). The court stated, "That a deadly weapon was involved, I think that's pretty clear in the offenses of the aggravated assaults. And everything else, a rock is a deadly weapon when used in the manner it was used." The application of factor (9) to the Defendant's convictions for aggravated assault by use or display of a deadly weapon and for felony reckless endangerment would be improper because use of a deadly weapon is an essential element of the offenses. See T.C.A. §§ 39-13-102, -103; see also T.C.A. § 40-35-114. However, the trial court's application of enhancement factor (9) to the Defendant's sentences for second degree murder and attempted second degree murder was proper because the use of a deadly weapon is not an essential element of those offenses. See T.C.A. §§ 40-35-114, 39-13-210, 39-12-101.

The trial court applied enhancement factor (10), that the Defendant had no hesitation about committing a crime when the risk to human life was high, to the attempted second degree murder convictions. Although the risk to life might be inherent in the Defendant's conduct, he put a second person at risk during each offense of attempted murder. See State v. Jones, 883 S.W.2d 597, 603 (Tenn. 1994) (holding that factor (10) applies when persons other than the victim are put at high risk). We hold that the trial court properly applied factor (10) to the attempted second degree murder convictions.

The trial court applied enhancement factor (13), that at the time the felony was committed, the Defendant was released on bail or pretrial release and was ultimately convicted of the prior misdemeanor or felony. T.C.A. § 40-35-114(13)(A). The record reflects that the Defendant had been arrested for aggravated assault and released on bond at the time he committed the offense in this case. He was ultimately found guilty of the lesser offense of misdemeanor reckless endangerment. The trial court properly applied factor (13) to all of the Defendant's offenses.

The trial court applied enhancement factor (16), that the Defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult, but gave it little weight. The court stated,

> And it is true that [the Defendant] had had a juvenile record, albeit, we're not exactly sure, but there was indeed a matter that had he not been a juvenile it would have been a felony. And I recognize that there's not a lot of proof with regard to that. And I haven't considered it very much, but it's there.

The presentence report stated that the Defendant had been charged as a juvenile with possession of drugs, possession of drug paraphernalia, public intoxication, violation of probation, and theft of property valued under $500, for which he received diversion, probation, or suspended commitment to detention. Most of the offenses for which the Defendant was charged as a juvenile were listed on the presentence report as "not defined." The presentence report does not reflect that the Defendant was adjudicated delinquent of any offense that would constitute a felony if committed by an adult. See T.C.A. § 40-35-114(16). Therefore, the trial court erred in applying enhancement factor (16).

The trial court rejected as mitigation that the Defendant was a minor actor in the commission of the offenses. See T.C.A. § 40-35-113(4). The court found that the Defendant could have driven away while two of his codefendants, Kelley and Morgan, were on the overpass. The court also found that because Ms. Weimer was in the second or third vehicle hit, the Defendant, by his own admission, could have stopped Kelley and Morgan. The

record reflects that the Defendant drove the van while Kelley and Morgan vandalized mailboxes, cars, and a store window. The Defendant could have stopped the van, ordered Kelley and Morgan out of the van, or returned to his home at any time. Instead, the Defendant continued to drive and allowed Kelley and Morgan to continue their criminal conduct. We hold that mitigating factor (4) provided no weight in mitigation.

The record reflects, however, that the trial court applied mitigating factor (13), the Defendant was a youth at the time of the offense and led by others. See T.C.A. § 40-35-113(13) (stating that a trial court can consider "any other factor consistent with the purposes of this chapter."). The court stated that the Defendant did not receive the maximum sentence "because I think that Mr. Carter's youth at the time of the commission of the offense, he was led to a certain extent by others, should give him a little bit of a break." The record supports application of mitigating factor (13).

In light of the trial court's errors in applying enhancement factors (3), (8), and (16), we will state which enhancement and mitigating factors were properly applied. Enhancement factors (1), (5), (7), (9), and (13) apply to the Defendant's conviction for second degree murder. See T.C.A. § 40-35-114. Enhancement factors (1), (5), (7), (9), (10), and (13) apply to the Defendant's convictions for attempted second degree murder. See id. Enhancement factors (1), (5), (7), and (13) apply to the Defendant's convictions for aggravated assault. See id. Mitigating factor (13) applies to each of the Defendant's convictions. See T.C.A. § 40-35-113(13).

We note that in sentencing the Defendant, the trial court again erred, as previously indicated by this court, "by starting at the midpoint of the applicable range for second degree murder. This provision was deleted under the 2005 amendment. The amended provision now provides '[t]he minimum sentence within the range of punishment is the sentence which should be imposed....' T.C.A. § 40-35-210(c)(1)." See Matthew Joseph Carter, slip op. at 15.

Despite the trial court's errors, we conclude that the Defendant has failed to show that the lengths of his sentences are inappropriate or that the trial court failed to consider the sentencing principles and all relevant facts and circumstances when imposing his sentences. Five enhancement factors remain applicable to the Defendant's conviction for second degree murder. Six enhancement factors remain applicable to the Defendant's convictions for attempted second degree murder. Four enhancement factors remain applicable to the Defendant's convictions for aggravated assault.

Enhancement factor (5), that the Defendant allowed a victim to be treated with exceptional cruelty during the commission of the offense, applies to all convictions and is influential because the Defendant went to the overpass not once, but twice, to drop objects

onto unsuspecting victims and because the Defendant allowed Kelley and Morgan to continue their criminal activities. Enhancement factor (7), that the offense involved a victim and was committed to gratify the Defendant's desire for pleasure or excitement, applies to all convictions and is likewise influential because the Defendant enjoyed the criminal acts and "laughed hysterically" about the vehicles that were hit.

Enhancement factors (9), that the Defendant possessed a deadly weapon during the commission of the offense, and (10), that the Defendant had no hesitation about committing a crime when the risk to human life was high, are significant. The ten-pound rock was a deadly weapon as used by the Defendant. The Defendant had already dropped objects from the overpass and had witnessed the destruction of the tractor-trailer's mirror. He was aware of the damage that objects could do when dropped from the overpass, but he did not hesitate to drop the ten-pound rock that killed Barbara Weimer. The record indicates that the trial gave little weight to enhancement factors (3) and (16), which were improperly applied and are not now under consideration. Although the record does not expressly state that greater weight was afforded to the remaining factors, this conclusion is implied due to the court's silence on this issue and the resulting sentences.

Given the trial court's proper application of numerous enhancement factors and the proper consideration of mitigation factor (13), accompanied by the court's express statement that this factor warranted giving the Defendant "a little bit of a break" and the imposition of sentences below the maximum, we conclude that the trial court imposed lawful sentences that comply with the purposes and principles set out in the Sentencing Act. We hold that the lengths of the Defendant's sentences imposed by the trial are appropriate.

## II

The Defendant next contends that the trial court erred in imposing consecutive sentencing. The State contends that the trial court properly imposed consecutive sentencing after finding the Defendant to be a dangerous offender. We agree with the Defendant.

The determination of concurrent or consecutive sentences is a matter left to the discretion of the trial court and should not be disturbed on appeal absent an abuse of discretion. State v. Blouvet, 965 S.W.2d 489, 495 (Tenn. Crim. App. 1997). Consecutive sentencing is guided by Tennessee Code Annotated section 40-35-115(b) (2010), which states in pertinent part that the court may order sentences to run consecutively if it finds by a preponderance of the evidence that:

> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation

-10-

about committing a crime in which the risk to human life is high; . . . .

If the trial court finds that the defendant is a "dangerous offender" pursuant to Tennessee Code Annotated section 40-35-115(b)(4), the court must also determine that "an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed." State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). "[T]hese two 'limitations' go beyond the definition of a dangerous offender and channel the types of aggravating circumstances that are required in order to impose consecutive sentences." State v. Tadaryl Darnell Shipp, No. 03C01-9907-CR-00312, Knox County, slip op. at 3 (Tenn. Crim. App. Mar. 21, 2000).

"In applying the public protection requirement of Wilkerson, trial courts should exercise caution when relying totally upon the circumstance of the offense." Id. "The commission of crimes which are 'inherently dangerous' does not by that fact alone justify consecutive sentences, because there are 'increased penalties' for such crimes." Id. at 2 (citing Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976)). "[P]articular facts" must establish the propriety of consecutive sentencing and "courts must make specific findings regarding the severity of the offenses and the necessity to protect society before ordering consecutive sentencing." State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999) (emphasis added).

At the resentencing hearing, the trial court stated:

I believe that . . . consecutive sentences in the manner in which I did it before for a total effective forty year sentence of twenty-three years at a hundred percent release eligibility, of eight-five percent effectively release eligibility, and six years at thirty percent. Eleven and six years consecutively at thirty percent release eligibility are related to the offenses. They are related to the severity of the offenses, related to the severity of the injury.

This has been a horrible case. I think that though I believe that what [the Defendant] has said today indicates that he is clearly making an effort to change his life, to protect his child, to protect his family, to do no more harm to anyone else, that these sentences in their aggregate consecutive are necessary to protect the public from further misconduct by this defendant. And I'm going to make those two [Wilkerson] findings and run

-11-

these consecutive for the same sentence that I had done before, which is forty years.

The record supports the trial court's finding that the Defendant was a dangerous offender pursuant to Tennessee Code Annotated section 40-35-115(b)(4). Undoubtedly, the conduct of the Defendant and his cohorts led to devastating results. The trial court, though, did not mention any "particular facts" upon which it based its finding that an extended sentence was necessary to protect the public. In fact, the trial court did the opposite, accrediting the Defendant's statements that he sought to improve his life and cause no further harm to society. The trial court also noted that "because I think that [the Defendant's] youth at the time of the commission of the offense, he was led to a certain extent by others, [this court] should give him a little bit of a break." We conclude that the record does not support the trial court's finding that consecutive sentencing was necessary to protect the public from the Defendant. The Defendant was twenty-four years old at the time of resentencing. The Defendant's criminal history as an adult consists of three convictions for misdemeanor offenses. On January 13, 2003, at the age of eighteen, the Defendant pled guilty to casual exchange of marijuana. On May 24, 2004, at the age of nineteen, the Defendant was convicted of public intoxication. That same day, the Defendant entered a best interest guilty plea to reckless endangerment not involving a weapon. Although the arrest warrant for this offense originally charged the Defendant with committing aggravated assault and stated that "the Defendant brandished a weapon, pointed it at the top of the victim's head, and threatened her life," the record reflects that the warrant was amended to charge the misdemeanor offense of reckless endangerment. No proof regarding this offense was presented. Because the trial court's findings indicate that it imposed consecutive sentencing based solely on the severity of the offense, we conclude that it did not comply with the mandates of Wilkerson. See Wilkerson, 905 S.W.2d at 939. As noted, the record does not justify a conclusion that society needs more than twenty-three years of protection from the Defendant. As a result, we are bound to hold that the imposition of consecutive sentencing was not supported.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed as modified. The sentences are to be served concurrently, for an effective twenty-three-year sentence.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE

-12-